TOWN OF MONTCLAIR, BY THE MONTCLAIR REDEVEL-OPMENT AGENCY, PLAINTIFF-APPELLANT, v. JOSEPHINE D'ANDREA, *ET AL.,* DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted October 14, 1975—Decided January 21, 1976.

Before Judges CARTON, CRAHAY and HANDLER.

*Mr. V. Seeley Romaine,* attorney for appellant.

*Messrs. Cerreto & La Penna,* attorneys for respondents (*Mr. Michael A. Cerreto* on the brief).

The opinion of the court was delivered by

CRAHAY, J. A. D. In this condemnation case involving the taking of property housing an on-going restaurant business the parties stipulated the value of the realty, leaving in issue whether a variety of pieces of restaurant equipment and fixtures were compensable and, if so, their fair value as just compensation to the condemnee.

The trial judge heard the matter without a jury. In a reported opinion, 131 *N. J. Super.* 243 (Law Div. 1974), it was held that all of the property including "a neon sign, counters, stools, cash register, glass display case, workbench with dishwasher and sink, refrigerator, exhaust fan, broiler and grill, steam table, toaster, three-ton air conditioner, slicing machine, freezer, tables and chairs, plates, knives and forks," were compensable and fixed their fair value at $8,421 — the "sound value" of those assets as testified to by the property owner's expert.

The condemning authority, the Town of Montclair by its Redevelopment Agency (Agency), appeals, essentially arguing that some of the items for which compensation was allowed were not within the "functional unit rule," *State v. Gallant,* 42 *N. J.* 583 (1964); Eminent Domain Act of 1971, *N. J. S. A.* 20:3–1 *et seq* (the 1971 act). It is also argued, although not meaningfully raised below, that full compensation should not be awarded since respondent may be entitled to benefits under the Relocation Assistance Act, *N. J. S. A.* 20:4–1 *et seq.*

Our review of the record satisfies us that it does not support a, finding of compensability as to all of the personalty on the condemned premises and we reverse.

We are in substantial accord with the trial judge's view that the "functional unit rule," as articulated in *Gallant* in 1964, continues as a viable measure of damages in eminent domain matters as a consequence of the provisions of the 1971 act. We, however, cannot join with his apparent holding that the "rule" is applicable, across the board, to personalty in condemned commercial and industrial properties, with the seeming proviso that where "items of equipment were capable of being used elsewhere and that its value would be substantially diminished if it were to be sold as secondhand equipment." Additionally, we are unable to find sufficient record support for the court's factual conclusion that all of the personalty would undergo "substantial" value diminution, thereby resulting in something

less than full and fair compensation to the property owner if not included within the property taken.

The trial judge held all the personalty to have been condemned under the functional unit rule, noting that the appellant's expert, Cohen, found "sound value" to be $8,017, and the condemnee's expert, Glander, $8,421 — a difference of about 5%. As noted, the judge assessed damages in the amount of $8,421, finding both experts qualified but giving greater weight to Glander's testimony and "the basis used by him for his evaluation".

The testimonial record is very brief. Cohen and Glander were the only witnesses and, except for their qualifications, their testimony treated of written appraisals earlier prepared. In his appraisal Cohen, on appellant's behalf, separated the personal property into two categories — (1) "if compensable" and (2) "compensable." Each item was then given a replacement cost (new) and a "sound value." The examination and cross-examination of the witness on the various items may at best be termed "general." In the "if compensable" category (noncompensable) Cohen included, illustratively, neon sign, counter stools, cash register, glass displays, a variety of refrigerators, broiler and grill, steam table, toaster, slicing machine, dehumidifier and tables and chairs. As examples of compensable items we find sign wiring, a large counter, shelves and shelving, metal hoods and duct work, plumbing installation for various appliances, cabinets and a hat and coat rack.

As noted, Cohen was not examined specifically as to the various items. Compensable articles were those which in his opinion, "could not be removed from the * * * premises without either damage to themselves or to where they were placed."

By his definition Cohen termed "if" (non) compensable items as those "of such a nature that * * * could be readily removed from the freehold without either damage to themselves or to where they were placed and could be used at another occasion [sic, location?] with the same efficiency."

He stated that some of the personalty, if sold as used equipment, would have a substantially reduced value.

In any event, Cohen's appraisal concluded that the sound value of the compensable property was $1,904. To this figure the trial judge, in arriving at $8,017 as Cohen's "sound value," added $5,363, the value set by Cohen for items he deemed "if compensable," and $750, fixed by him in an amended appraisal, for "catalog" items such as plates, dishes, cups, glasses, knives, forks, etc.

Glander, on the property owner's behalf, fixed "sound value" (or depreciated value in place) at $8,421. Contrary to Cohen, Glander deemed all the personalty compensable, stating in his appraisal that "All items, which in our opinion, have become a homogeneous part of the land and building are included."

Glander's testimony in support of his conclusion was extremely general, conclusional and ofttimes responsive to leading questions, albeit not found objectionable by the court or counsel. There was no attempt to differentiate between such items as cash registers and specially designed and securely affixed serving counters. It is clear that all property here was treated by the condemnee's expert as compensable since it was in use in an on-going business and in his opinion subject to substantial loss in value on removal. In our view this appraisal, essentially accepted by the trial judge, does not square with the "functional unit" rule reflected either by *Gallant* or the 1971 act.

In *Gallant*, on appeal from an award of commissioners, the condemnee had a Law Division judgment of $52,000 for land and buildings taken. The Appellate Division affirmed the trial court's disallowance of the property owner's offer to prove that 12 large and old looms utilized in an on-going weaving business had an added value of $52,000 and that the cost of dismantling and removing them because of complex engineering problems would be $39,600. The Supreme Court, agreeing with the Appellate Division that compensability was not dependent on whether the looms were

to be regarded as fixtures to realty in some classical sense, stated its disagreement that the test for compensation was the looms' "removability." 42 *N. J.* at 586.

In reaching the "functional unit" rule *Gallant* restated the then existing principles of condemnation law, commencing with the constitutional mandate that "Private property shall not be taken for public use without just compensation * * *." *N. J. Const.* (1947), Art. I, par. 20.

The fair market value of the real estate taken is the basis for determining just compensation, which value may be ascertained by a price which would be agreed upon voluntarily by a hypothetical owner willing to sell to a willing hypothetical buyer. This somewhat indefinite concept, if flexibly applied, can attain the goal of "justice and indemnity in each particular case." Ordinarily, compensation is not allowed for damages incidental to the taking because of the difficulty in the admeasurement of such allowances.

A fee owner was generally not permitted to recover the value of personalty abandoned or the costs of removing it. When less than an entire parcel was taken allowances were permitted for consequential damages to the untaken portion.

Turning to the record before it, the *Gallant* court concluded that the condemnee was entitled to an award for the looms, holding that they were "an integral and valuable part of a going business." It was noted that upon condemnation the property owner was faced with either retrieving the looms' second-hand value or, if opting to remove them, suffering "the economic loss attendant upon the necessarily expensive and intricate removal procedures." We pause to note that the property in this matter was not of the kind dealt with in *Gallant* nor was its owner faced with a *Gallant* dilemma as to all of the personalty in the restaurant.

The "functional unit" rule was then stated thus:

Where, therefore, a building and industrial machinery housed therein constitute a functional unit, and the difference between the value of the building with such articles and without them, is substantial, compensation for the taking should reflect that enhanced

value. This, rather than the physical mode of annexation to the freehold is the critical test in eminent domain cases. [54 *N. J.* at 590]

The 1971 Eminent Domain Act defines "property" in this way:

"Property" means land, or any interest in land, and (1) any building, structure or other improvement imbedded or affixed to land, and any article so affixed or attached to such building, structure or improvement as to be an essential and integral part thereof, (2) any article affixed or attached to such property in such manner that it cannot be removed without material injury to itself or to the property, (3) any article so designed, constructed, or specially adapted to the purpose for which such property is used that (a) it is an essential accessory or part of such property; (b) it is not capable of use elsewhere; and (c) would lose substantially all its value if removed from such property. [*N. J. S. A.* 20:3-2(d)]

We deem this section to be essentially a legislative codification of *Gallant's* decisional expression of the "functional unit" rule. We observe first that all personalty on condemned real estate is not declared to be "property" within the contemplation of this act.

█ *Gallant* flatly held that "removability" of an article did not bar its consideration as a compensable item. It obviously does not follow from that holding that all removable personalty in condemned industrial, commercial or business establishments was meant to be compensable. The thesis required that the building taken with or without such articles would undergo a substantial change in value. Compensation was to be allowed only for such enhanced value. We cannot say that all of the articles for which compensation was allowed by the trial judge satisfied this test. Nowhere was it said that the property considered as a functional unit suffered a substantial change in its value with or without the various items cataloged earlier. We do not deem testimony that individual items, *i. e.,* used cash register, toaster, etc., would be substantially diminished in value away from the premises — if such be the case — as satisfying the

criteria. We have earlier expressed our views on the conclusional and unpersuasive quality of the proofs in this regard.

■ So, too, under the 1971 act. To be deemed "property" such articles must be viewed in either of two ways: (1) are they attached to the realty in a manner which makes them incapable of removal without material injury to themselves or the realty or its improvements, or (2) are they so designed, constructed or specially adopted to the purpose for which the improved realty is used that (a) they are essential accessories or parts of the improved realty, (b) are not capable of use elsewhere, and (c) would substantially lose all value if removed.

■ Looked at in either light we cannot say that all of the items reflected in this record satisfied the definition of compensable "property". We do not read *Clementon Housing Auth. v. Myers,* 115 *N. J. Super.* 467 (App. Div. 1971), and *State v. P. & C. Realty Co., Inc.,* 121 *N. J. Super.* 554 (Law Div. 1972), on their particular facts (both involved clothing factories) as calling for a contrary conclusion. Both those authorities are in our view consonant with *Gallant* and the 1971 act. See also, *New Jersey Sports and Exposition Auth. v. East Rutherford,* 137 *N. J. Super.* 271 (Law Div. 1975). We are satisfied that, stated another way, all of the articles for which compensation was allowed by the trial judge neither met the criteria of *N. J. S. A.* 20:3–2(d) nor were they trade fixtures of a kind which would cause a substantial difference in the value of the building without them so that added compensation should have been allowed to reflect enhanced value. *Gallant, supra,* 42 *N. J.* at 590.

■ Since on this record it does not appear that any of the articles used in connection with the restaurant business have been removed we need not discuss the applicability of *N. J. S. A.* 20:4–3, the Relocation Assistance Act. In our view that statutory provision is but another step in allowing just compensation for incidental damages flowing from the exercise of eminent domain. Parenthetically, we observe that

in a case such as this the reasonable costs of removal may be substantially less than damages awarded for the "taking" of such "property." We view the constitutional mandate in these matters as requiring, as far as practicable, just compensation, nothing less or more.

The judgment under review is reversed and remanded for a new trial.